Folger, J.
(stating the views of the court). The judgment must be affirmed. The learned justice, at Special Term, has found, that the assignment of the policy was obtained from the plaintiff by undue influence ; she being in fear and under the compulsion of her husband, and acting under duress and coercion. He further finds that she did not freely or voluntarily sign the printed blank, which was afterward filled up so as to form an assignment. We have examined the testimony ; we cannot say that there is not in it that which will warrant those findings.
We do not agree, however, with the learned justice, that a bona fide purchaser for value, acquires a good title to a chose in action which he has bought from one who has procured it from the owner of it by undue influence, compulsion and coercion. There is a class of cases which hold that where the owner of property, induced by false representations, sells it and parts with the possession of it with' the intention of passing the title to the vendee, there the bona fide purchaser for value from the fraudulent vendee obtains a title which he can defend. In such case there is a voluntary parting with the possession of the property and there is an uncontrolled voli *592 tion to pass the title. But wliere there exist coercion, throats, compulsion and undue influence, there is no volition. There is no intention nor purpose, but to yield to moral pressure, for relief from it. A case is presented more analogous to a parting with property fey robbery. No title is made through a possession thus acquired. (See Loomis v. Ruck* in this court, May 26th, 1874.)
We cannot doubt that this policy was contracted for and issued with an eye to the provisions of the act of 1840 (Laws of 1840, chap. 80), as amended (Laws of 1858, chap. 187; Laws, 1862, chap. 70; Laws, 1866, chap. 656). It is expressed in it that it is in conformity to the statute. The terms of the contract, to pay on the termination of the life insured, are in close pursuance of the provisions of the act. That act as amended is still in existence and operative, notwithstanding the subsequent legislation enlarging the legal status of married women. The legislature has practically so declared by repeated amendments of it. (See, in addition to those above cited, Laws of 1870, chap. 277; Laws 1873, chap. 821.) We know of no subsequent legislation which can take the place of that in the act of 1840, exempting the insurance money from the claim of the personal representatives and creditors of the husband whose life has been insured in accordance with its enabling provisions. This being so, the majority of the judges taking part in the decision, feel not only bound to follow Eadie v. Slimmon (26 N. Y., 9), upon the principle of stare decisis, but as convinced that the decision of that case was correct in its result. That decision went, (in its denial of a motion for reargument), on several grounds: First. That by the common law a person could insure the life of another person only for the interest which he had in it; if he undertook to insure a gross sum, and the contract was not susceptible of a construction which would limit the recovery to the actual damages sustained, the contract would be void under the statute against gaming and betting; that this principle was relaxed in favor of a mar *593 ried woman, by the act of 1840, so that she could insure for any sum for which she could obtain a contract from an insurance company. Second. That by the general rules of law, a policy on the life of one sustaining only a domestic relationship to the insured, would become inoperative by the death of such insured in the lifetime of oestui quo oie; or, if it could be enforced as existing for any purpose after that event, it would be for the benefit of the personal representatives of the insured; but that, by that act, the contract might be continued in favor of children of the insured wife, after her death. And, it was further remarked, that the act was special and peculiar, and looked to a provision for a state of widowhood and orphanage ; and that it would be a violation of the spirit of the provision to hold that a wife insured under that act could sell or traffic with her policy as though it were realized personal property, or an ordinary security for money. Upon this latter ground, the majority of the judges taking part in this decision now put their assent to Eadie v. Slimmon, and upon that ground also are for the affirmance of the judgment in this case. Without that act, when this policy was issued, the insurance money, being for premiums paid out of the funds or property of the husband, could not have been retained from the personal representatives or creditors. That act sought that result, not for the sake of the woman while a wife, but when a widow; not that she might sell or assign the contingency which was created by the policy, but that it should be kept for her until, by the death of her husband, she surviving, it became realized personal property; or for the children, when .by his death, after surviving her, it became realized personal property to them surviving. The majority of the judges taking part think that this is the policy and intention of the act, and that it still exists ; that the contract for insurance was issued under it and is controlled by it, and that the power of disposition over it is and should be restricted, so as to b'e in accordance therewith. They further think that the subsequent legislation, enlarging the legal capacity of married women, does not supersede the *594 ■act of 1840, nor give them other power to deal with a policy issued undpr it, than they had by it; for the reason that the act is an enabling act, confers a special privilege, and is in the nature of a law exempting goods from execution; that the privilege is given in view of an especial legislative intention and policy, which would be subverted if the contingent interests arising under it could be treated and dealt with as the separate property of a married woman, to be disposed of or affected by her subsequent contracts. The minority do not think the determination of this question necessai-y to a decision of the case, and doubting whether the effect of the married women’s act is not more sweeping than here allowed to be, express no opinion.
The appellants claim that the ease is to be decided upon the law as it is in the State of Maryland. This is not tenable; the contract was not made there. The insurance company is a corporation of this State, having its place of business here. The contract wras made here and is payable here, and this action is here. Mor was the assignment delivered out of this State. The appellant Bruñe received the policy in the city of Mew York; the assignment was there committed to the public mails, his agent for him, and received by him through the public mails.
The point that the plaintiff was not competent as a witness, under section 399 of the Code, is not tenable. Bruñe was not an assignee of John S. Barry, the deceased person.
The insurance company has not excited nor protracted this litigation; it 1ms been ready to pay the money to whomsoever should, by the judgment of a court, be declared entitled. It should not be mulcted in costs for the differences of parties whom it could not control. Its costs should be paid by some one, and reasonably by whomsoever began and carried on the unsuccessful litigation.
The judgment appealed from is affirmed, with costs.
The judges taking part in the decision of the case were Ohüeoii, Oh. J., Allen, Gboveb, Folg-kr and Andrews, JJ.
All concur in that part of the opinion putting the affirm *595 anee on the ground of coercion; Church, Oh. J., Allen and Andrews, JJ., held the view expressed in the whole opinion; Rapallo, J., not voting.
Judgment affirmed.

 56 N. Y., 462.